Calvin Bernard Brooks was indicted for burglary in the first degree and convicted of burglary in the third degree. He was sentenced to ten years' imprisonment.
The State's evidence established that the residence of one Anthony Gray was broken into on July 11, 1983. A shotgun, a rifle and two pistols were reported missing. Houston County investigators later located the shotgun and the rifle at two Georgia pawnshops. The pawn tickets were dated July 11, 1983, and signed by the defendant.
 I
Brooks objected to the court's alteration of a portion of one of his written requested charges from "all reasonable doubt" to"a reasonable doubt." The pertinent part of the requested charge reads as follows:
 "The test of the sufficiency of circumstantial evidence is whether the circumstances, as proved, produce a moral conviction, to the exclusion of all
reasonable doubt, of the guilt of the Defendant. . . ." (Emphasis added).
We find no error in the court's substitution of the word "a" for "all", and its giving the charge in altered form. SeeChavers v. State, 361 So.2d 1106, 1108-09 (Ala. 1978); Craft v.State, 402 So.2d 1078, 1080 (Ala.Cr.App.), cert. denied,402 So.2d 1080 (Ala. 1981).
 II
At trial, Brooks objected to the State's introduction of a photostatic copy of an Albany, Georgia pawn ticket bearing the words "Stolen Property." He claims that the exhibit violated the best evidence rule and was "highly prejudicial to the Jury."
Since the pawnshop and its operator were located in the State of Georgia, outside the subpoena power of Alabama, the copy of the pawn ticket was admissible as an exception to the best evidence rule for an "original writing . . . in the possession or control of a third person outside of Alabama." C. Gamble,McElroy's Alabama Evidence § 217.01 (1) (3d ed. 1977).
Because the victim described the stolen guns and stated that they had been returned to him as a result of the investigation in this case, any notation on the pawn ticket characterizing the same property as stolen was merely cumulative of other evidence that the weapons had been taken during the burglary of the victim's residence. See Gullatt v. State, 409 So.2d 466,474 (Ala.Cr.App. 1981); A.R.A.P. 45. In addition, the defendant had the benefit of the following testimony introduced in explanation of the pawn ticket's notation:
 "Q [By District Attorney]: Now, this is a notation that is on the face of this ticket? Is that correct?
"A Yes.
 "Q And, I believe it refers to stolen property. Would you tell the Court and Jury what that has to do with it and when it was placed on this ticket.
 "A Okay. After we identified this gun as being stolen and took it into my possession or Detective Monzi's possession, this was put on there for the pawn shop records, showing where this particular gun went to for their records.
"Q To protect the pawn shop?
 "A To protect the pawn shop, according to the Federal laws.
 "Q Okay. Had nothing to do with the Defendant in this case?
"A No, sir."
 III
On cross-examination of State's witness Houston County Sheriff's Sergeant Kenneth Bryan, the following occurred:
 "Q [By Defense Counsel]: Did you record Mr. Brooks' statement to you?
"A On some other cases. Yes, sir.
 "MR. CRESPI: Your Honor, I object. And, I ask that be stricken from the Record and that the Jury be instructed to disregard it. That was not responsive.
 "MR. SORRELLS: Judge, we submit it was responsive to his question. We don't mind you instructing the Jury to it. *Page 760 
 "MR. CRESPI: Your Honor, he was asked if he took, had this statement recorded. And, he gave a non-responsive and highly prejudicial answer.
 "THE COURT: He didn't say anything about involving the Defendant, but if you want it excluded, I will exclude it. Ladies and Gentlemen, don't consider that when you come to make up your verdict in this case.
 "MR. CRESPI: Your Honor, we ask for a Mistrial based on that statement.
"THE COURT: And, I overrule you."
Brooks asserts that his motion for mistrial was due to be granted because of the impermissible suggestion that he was implicated in other criminal matters. Reviewing a similar occurrence in Kendrick v. State, 444 So.2d 905 (Ala.Cr.App. 1984), this court noted that an indirect reference to the defendant's involvement in other crimes is not incurably harmful to the accused, and any possible prejudice may be eradicated by the trial judge's prompt curative instruction to the jury. Citing the principle approved in Borden v. State,337 So.2d 1388 (Ala.Cr.App. 1976), the court observed that "when a trial judge sustained an objection and properly instructed the jury to disregard the matter such action was not erroneous unless the matter was of such a nature that it created ineradicable bias or prejudice." Kendrick, 444 So.2d at 909.
In the present case, the reference to defendant's statements "on some other cases" was not so harmful as to be ineradicable. The trial court's exclusion of the remark and prompt admonition to the jury to disregard it served to cure the possible prejudice to the defendant.
 IV
The defendant argues that the trial court erred by allowing Sergeant Bryan to testify to his understanding of pawn shop procedures in Albany, Georgia. Specifically, he objected, on the grounds of hearsay, and the denial of his right to confront adverse witnesses, to Bryan's statement that the notation "Stolen Property" on the ticket was "for the benefit of the Federal Government, to show where this gun went to."
As we have pointed out in Part II of this opinion, Sergeant Bryan's explanation of the writing on the pawn ticket was, if anything, beneficial to the defendant. A.R.A.P. 45.
Furthermore, the officer who made the notation on the pawn ticket was present and available for cross-examination at trial so that defendant's right of confrontation was not denied. SeeStinson v. State, 401 So.2d 257, 261-62 (Ala.Cr.App.), cert.denied, 401 So.2d 262 (Ala. 1981). Defense counsel, in fact, cross-examined the officer later in the trial and elicited from him the same testimony to which he now objects on appeal. From the record:
"CROSS EXAMINATION
"By Mr. Crespi:
 "Q I believe you testified, sir, that you were familiar with the pawn procedures in Albany, Georgia?
"A Yes, sir.
"Q Are you thoroughly familiar with those procedures?
"A Yes, I am.
 "Q And, are you familiar with the kind of paper work that you fill out every time an object is brought in for pawn?
"A Yes, sir.
 "Q Okay. And, is it not customary that at the time the original ticket is made out, there is one or more carbon copies made contemporaneously with that?
"A Yes.
 "Q Would that carbon copy be kept at the pawn shop after the object that was pawned or the person that pawned it left?
"A That is correct.
 "Q And, that would be done as far as you know in every instance?
"A Yes, sir."
Defendant's questions regarding the officer's familiarity with Georgia pawn procedures rendered any error in the prior admission of such testimony by the State harmless. SeeChambliss v. State, 373 So.2d 1185, 1207 (Ala.Cr.App.), cert.denied, *Page 761 Ex parte Chambliss, 373 So.2d 1211 (Ala. 1979).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.